UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Docket No. 08-CR-212-P-S |
| ) | |
| MICHAEL BERK, ) | |
| ) | |
| Defendant. ) | |

### AMENDED[1] ORDER ON RESTITUTION

Before the Court is the Government's request for restitution on behalf of "Amy" and "Vicky"—two individuals allegedly depicted in pornographic images that Defendant Michael Berk unlawfully possessed.

For the reasons explained below, the Court DECLINES to order restitution.

### I.   APPLICABLE LEGAL STANDARD

Whether restitution is an appropriate sanction for an offender convicted of possessing child pornography appears to be an issue of first impression in this district. The authority for the Government's request is 18 U.S.C. § 2259, which provides:

> **§ 2259.   Mandatory Restitution.**
>
> **(a)  In general.**—Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter.
>
> **(b)  Scope and nature of order.**
>    **(1)   Directions.**—The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court pursuant to paragraph (2).

---

[1] This Amended Order corrects a typographical error and an error in citation in the Order dated October 26, 2009 (Docket # 133). In the first full paragraph on page 5, the Order reads "for requiring a casual connection" and cites to page 125 of docket number 125. The Order should read "for requiring a causal connection" and cite to pages 101-02 of docket number 125.

>    **(2) Enforcement.**—An order under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A.
>    **(3) Definition.**—For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for—
>       **(A)** medical services relating to physical, psychiatric, or psychological care;
>       **(B)** physical and occupational therapy or rehabilitation;
>       **(C)** necessary transportation, temporary housing, and child care expenses;
>       **(D)** lost income;
>       **(E)** attorneys' fees, as well as other costs incurred;
>       **(F)** any other losses suffered by the victim as a proximate result of the offense.
>    **(4) Order mandatory.**—
>       **(A)** The issuance of a restitution order under this section is mandatory.
>       **(B)** A court may not decline to issue an order under this section because of—
>          **(i)** the economic circumstances of the defendant; or
>          **(ii)** the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source.
>
> **(c) Definition.**—For purposes of this section, the term "victim" means the individual harmed as a result of the commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal estate, another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named as such representative or guardian.

The Government bears the burden of demonstrating "the amount of the loss sustained by a victim as a result of the offense." 18 U.S.C. § 3664(e). The applicable evidentiary standard is preponderance of the evidence. <u>Id.</u> A restitution order is reviewed for abuse of discretion. <u>United States v. Hensley</u>, 91 F.3d 274, 277 (1st Cir. 1996).

## II.   FACTUAL BACKGROUND

Defendant Michael Berk pleaded guilty to possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).[2]  He admitted to possessing in excess of 50,000 still images and 50 videos portraying child pornography.  Roughly 6,000 of the still images and 10 of the videos have been identified as belonging to approximately 104 different series[3] of images.

The Government has requested that the Court order, as part of Defendant Berk's sentence, restitution for the losses incurred by two individuals (who have since attained the age of majority) allegedly portrayed in images found in his possession.  "Amy," depicted in the "Misty" series, seeks at least $3,367,854.00 in restitution for ongoing mental health expenses, lost income, attorney's fees, and miscellaneous expenses.  "Vicky," depicted in the "Vicky" series, seeks $151,002.91 in restitution for future counseling expenses, miscellaneous expenses, and attorney's fees.

## III.   DISCUSSION

### A.   Victims

The Court must first determine whether "Amy" and "Vicky" are "victims" of Defendant's offense.  Section 2259(c) defines "victim" as "the individual harmed as a result of a commission of a crime under [chapter 110 of title 18, United States Code]."  It is undisputed that the Defendant was convicted of such a crime.  The only issue in dispute (with respect to this analysis) is whether the Government has presented adequate evidence showing that "Amy" and "Vicky" were "harmed" as a result.

---

[2] After a bench trial, Berk was also convicted on two counts of enticing a minor in violation of 18 U.S.C. § 2422(b).  These convictions are irrelevant to the restitution request and will not be discussed here.

[3] A series is a set of images that features the same child.

At sentencing, the Government submitted evidence showing that "Amy" and "Vicky" were depicted in a number of images that were found in the Defendant's possession. (Government Exs. 1-3.) Specifically, two reports from the Center for Missing and Exploited Children identify "Amy" in 149 images and "Vicky" in 196 images possessed by the Defendant. The Defendant has presented no evidence disputing this identification. Accordingly, the Court finds that "Amy" and "Vicky" were depicted in images found in the Defendant's possession.

The Supreme Court has recognized that "[t]he distribution of photographs and images depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children" and that "the harm to the child is exacerbated" when their images are circulated. New York v. Ferber, 458 U.S. 747, 759 (1982). Moreover, courts have uniformly held that the individuals depicted in child pornography are "victims" within the meaning of § 2259. See, e.g., United States v. Ferenci, No. 1:08-cr-0414 AWI, 2009 WL 579102, at *3 (E.D. Cal. Aug. 19, 2009). The Court finds that the Government has established that "Amy" and "Vicky" were "harmed as a result of" the Defendant's possession of depictions of their sexual abuse. "Amy" and "Vicky" are therefore "victims" of the Defendant's offense for purposes of § 2259.

### B. Whether § 2259 Contains a Proximate Cause Requirement

The Defendant and the Victims vehemently disagree as to whether § 2259 requires the Government to prove that the victims' losses were proximately caused by the specific conduct underlying the offense of conviction. Stated another way, the issue is whether § 2259 allows a victim to recover only those losses proximately caused by the defendant being sentenced, or whether it allows a victim to recover the full amount of her

4

losses from the defendant being sentenced, notwithstanding other defendants' (most obviously, the abuser's) contribution to the loss.

1. The Parties'[4] Contentions

"Amy" and "Vicky" (the "Victims") contend that there is "absolutely no basis [in § 2259] for requiring a causal connection between the victim's losses and the defendant's criminal conduct." (Amy's Br. on Restitution (Docket # 125) at 101-02.) They argue that the statute mandates that the Court order restitution for the "full amount" of their losses and that no proof is required linking the amount of loss to a specific defendant's conduct. The Victims contend that child pornography is a "joint enterprise," which makes it "impossible to apportion [their] harm amongst the numerous past, present, and future defendants. This Defendant undeniably contributed to [the Victims'] 'death by a thousand cuts' when he received and/or distributed [their] child pornography images." (Id. at 90.) The Victims argue that each person who is found to have possessed their images is jointly and severally liable for all of their losses.

The Defendant argues that there is an implicit proximate cause requirement in § 2259 and that the Court must consider the actual harm done to the Victims as a result of his offense of conviction. He contends that the Court is not authorized to order restitution for the full amount of the Victims' losses because he merely possessed their images and did not produce, manufacture or distribute them.

---

[4] The Court notes that the Victims are not parties to this proceeding, see United States v. Gamma Tech Indus., Inc., 265 F.3d 917, 923 n.6 (9th Cir. 2001) ("Victims have never had standing to appear as parties in criminal cases."), and that the Government is tasked with advocating on their behalf. See 18 U.S.C. § 3664(d). The Court, however, invited the Victims to submit briefs addressing particular issues related to restitution. (See Docket # 111.) The briefs show an obvious conflict between their position and the Government's position, especially with respect to whether there is a proximate cause requirement in § 2259. The Court therefore considers their arguments and the Government's arguments. See Gamma Tech, 265 F.3d at 923 (allowing victims to appear at restitution hearing and present evidence because the government was opposing restitution).

5

The Government notes that there is "tension" between § 2259's direction that the Court order restitution for the "full amount of the victim's losses" and statutory provisions that imply a causation requirement or allow the Court to apportion restitution based on a defendant's culpability. The Government also points to a number of decisions interpreting § 2259 to include a proximate cause requirement. (Government's Br. on Restitution (Docket # 123) at 12.) The Government notes that "[g]eneral principles of fairness and sentencing require that a court make individualized, fact-specific determinations of the issues." (Id. at 10.) Ultimately, the Government states that to be recoverable, the Victims' losses "must have been the proximate result of Mr. Berk's possession of child pornography." (Id. at 14.)

### 2. Restitution and Causation Generally

Historically, the amount of restitution has been tied to the amount of loss caused by the particular offense of conviction. 3 Wright, Miller, et. al, Federal Practice & Procedure § 528.2 (3d ed. 2004) ("It has long been permissible for a court . . . to require, as one condition of probation, that defendant make restitution to aggrieved parties for actual damages or loss caused by his offense."); see also United States v. Shelby, 573 F.2d 971, 976 (7th Cir. 1978) (holding that it was erroneous for a court to order restitution in excess of the "actual loss caused by the offenses for which conviction was had").

It was against this background that Congress passed the Victim and Witness Protection Act of 1982 ("VWPA"). Pub. L. No. 97-291, 96 Stat. 1248 (codified at 18 U.S.C. § 3579 (1982)). By enacting detailed restitution provisions in the VWPA, Congress intended to push courts, when imposing criminal sentences, to "insure that the

wrongdoer is required to the degree possible to restore the victim to his or her prior state of well-being." S. Rep. No. 97-532, at 30 (1982). Cases interpreting the VWPA illustrate, however, that Congress did not relax the preexisting limitation that a crime victim may recover in restitution only those losses caused by the specific conduct for which a defendant is convicted.

For example, in Hughey v. United States, 495 U.S. 411 (1990), the defendant pleaded guilty to misuse of one credit card pursuant to a plea agreement. The district court ordered the defendant to pay restitution for his misuse of twenty-one different credit cards. The Supreme Court reversed, holding that the VWPA authorized courts to order restitution for only the "loss caused by the specific conduct that is the basis of the offense of conviction." Id. at 413.

In the First Circuit, the seminal case regarding the interplay between causation and restitution is United States v. Vankin, 112 F.3d 579 (1st Cir. 1997). In Vankin, the court announced a number of guiding principles:

> First: Restitution should not be ordered in respect to a loss which would have occurred regardless of the defendant's conduct.
> . . .
> Second: Even if but for causation is acceptable in theory, limitless but for causation is not. Restitution should not lie if the conduct underlying the offense of conviction is too far removed, either factually or temporally, from the loss.

Id. at 589. Ultimately, the court held that under the VWPA "the government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally)." Id. at 590. Subject to certain

7

amendments to the VWPA that apply in cases involving a "scheme, conspiracy, or plan," Vankin remains good law.  See United States v. Cutter, 313 F.3d 1, 7 (1st Cir. 2002).

        3.      Interpretation of § 2259

Although the First Circuit has yet to interpret § 2259, nearly every court to have done so has found that it requires the victim's loss to have been proximately caused by the offense of conviction.  See, e.g., United States v. Laney, 189 F.3d 954, 965 (9th Cir. 1998) ("Section 2259 . . . incorporates a requirement of proximate causation[,] . . . a casual connection between the offense of conviction and the victim's harm."); United States v. Crandon, 174 F.3d 122, 126 (3rd Cir. 1999) (the offense conduct must be a "substantial factor" in the victim's losses); United States v. Pearson, No. 1:04-cr-340, 2009 WL 2383025, at *5-6 (N.D.N.Y. July 30, 2009) (entering a restitution order of one-third the amount requested by the victim because only that amount was proximately caused the by offense of conviction); United States v. Raplinger, No. 05-cr-49-LRR, 2007 WL 3285802, at *2 (N.D. Iowa Oct. 9, 2007) (restitution is proper under § 2259 for "any loss suffered by a crime victim as a proximate result of the offenses of conviction"); but see, United States v. Staples, No. 09-14017-CR, 2009 WL 2827204, at *4 (S.D. Fla. Sept. 2, 2009) (entering restitution order of $3,680,153.00 without any analysis of causation).

The Court agrees with the Ninth Circuit's reasoning set forth in Laney.  As discussed above, § 2259 defines "victim" as "the individual harmed as a result of a commission of a crime."  18 U.S.C. § 2259(c).  Moreover, it states that the restitution order should compensate for "the full amount of the victim's losses," id. § 2259(b)(1), which includes medical costs, therapy costs, lost income, and "any other losses suffered

by the victim as a proximate result of the offense." Id. § 2259(b)(3)(F). Thus, the plain language of the statute clearly requires that losses—to be recoverable in restitution—must have been proximately caused by the acts which constitute the offense of conviction.

The Victims contend the phrase "as a proximate result of the offense" modifies only "any other losses" and does not apply to the other categories of losses set forth in § 2259(b)(3). (Vicky's Restitution Br. (Docket # 124) at 3-4; Amy's Br. on Restitution at 102.) But the Supreme Court has held: "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." Porto Rico Ry., Light & Power Co. v. Mor, 253 U.S. 345, 348 (1920). The phrase "as a proximate result of the offense" is equally as applicable to medical costs, lost income, and attorney's fees as it is to "any other losses."[5] Accordingly, the natural construction of the statute demands that the proximate cause requirement be read as applicable to every class of loss set forth in the statute.[6]

---

[5] The Victims emphasize that Congress intended § 2259 to provide a "broad remedy" and argue that reading a proximate cause requirement into all categories of loss conflicts with congressional intent. In Hughey, however, the government advanced this same argument and the Supreme Court was unpersuaded. 495 U.S. at 420-21. Moreover, the Court determines congressional intent by examining the language of the statute, see United States v. Ahlers, 305 F.3d 54, (1st Cir. 2002) and the language of § 2259 allows for recovery of only those losses suffered by the victim as a proximate result of the offense. The Court must presume that Congress "says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992).

[6] Additionally, "an Act of Congress ought not be construed to violate the Constitution if any other possible construction remains available." Rust v. Sullivan, 500 U.S. 173, 190 (1991); see also Veiga v. McGee, 26 F.3d 1206, 1212 (1st Cir. 1994) ("In the absence of clear legislative intent, we will not adopt an interpretation of a statute that would render it constitutionally suspect."). The Court has serious concerns about whether a restitution order of the sort the Victims propose—one not limited to losses proximately caused by the offense of conviction—would withstand constitutional scrutiny. The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. At least one appellate court has held that restitution orders are subject to the Eighth Amendment's Excessive Fines Clause. See United States v. Dubose, 146 F.3d 1141, 1144 (9th Cir. 1998). Others have assumed they are. See United States v. Lessner, 498 F.3d

If the Court were to adopt the Victims' reading of the statute, a restitution order could hold an individual defendant liable for more harm than that caused by his particular offense of conviction. But a restitution order can encompass losses other than those personally caused by the defendant only if the offense of conviction has a "scheme, conspiracy, or pattern" as an element. See 18 U.S.C. § 3663A(a)(2); United States v. Collins, 209 F.3d 1, 3 (1st Cir. 1999) ("each conspirator may be ordered to pay restitution for all the reasonably foreseeable losses caused by any conspirator in the course of the conspiracy.").

Child pornography offenses may seem analogous to crimes involving schemes, conspiracies, or patterns in that the end-user/possessor of child pornography "create and sustain" a market for pornographic images which, in turn, motivates abusers to produce more images. See United States v. Robinson, 137 F.3d 652, 656 (1st Cir. 1998). Indeed, the Victims argue that "[t]he illicit trade in child pornography is a joint enterprise." (Amy's Restitution Br. at 90.) While possessors certainly play an essential role in the market for child pornography, the offense of conviction here—possession of child

---

185, 205-06 (3d Cir. 2007); United States v. Newsome, 322 F.3d 328, 342 (4th Cir. 2003). Although the First Circuit has not squarely addressed the issue, it has observed that restitution "is part of a sentence," United States v. Acosta, 303 F.3d 78, 87 (1st Cir. 2002), and a "portion of a defendant's punishment," United States v. Innarelli, 524 F.3d 286, (1st Cir. 2008).

Assuming the Eighth Amendment applies, there is little guidance on what constitutes an "excessive fine" in the context of a restitution order. See United States v. Dean, 949 F. Supp. 782, 784 (D. Or. 1996) ("Few cases address application of the Eighth Amendment to an order of criminal restitution."). Generally, there is no Eighth Amendment violation if there is proportionality between the amount of restitution and the loss caused by the illegal activity. See Dubose, 146 F.3d at 1145 (finding that restitution ordered pursuant to the Mandatory Victims Restitution Act did not violate Eighth Amendment because it was "geared directly to the amount of the victim's loss caused by the defendant's illegal activity."). Were the Court to follow the path proposed by the Victims, however, and order restitution in the "full amount" of their losses without an individualized inquiry into the amount of losses proximately caused by the Defendant's conduct, there would be no proportionality. The Court is concerned that a restitution order of this kind could run afoul of the Eighth Amendment.

The Court's concerns about whether the Victims' interpretation of § 2259 would render it unconstitutional lend further support to the Court's interpretation of the statute so as to limit recoverable losses to those proximately caused by the offense of conviction.

10

pornography in violation of 18 U.S.C. § 2252A(a)(5)(b)—does not have a scheme, conspiracy, or pattern as an element. Accordingly, the Court is authorized to order restitution solely for those losses proximately caused by the conduct underlying the offense of conviction. See United States v. Benjamin, 30 F.3d 196, 198 & n.1 (1st Cir. 1994) (unless the underlying offense involves a scheme, conspiracy, or pattern of criminal activity as an element, the VWPA authorizes the court to consider only the offense of conviction in ordering restitution).

### C. Application of § 2259 to this the Defendant's Possession of the Victims' Images of Child Pornography

It has long been uncontroversial to order restitution when the defendant is convicted of the actual physical abuse of a child or of producing images constituting child pornography. See, e.g., United States v. Doe, 488 F.3d 1154, 1159 (9th Cir. 2007); United States v. Julian, 242 F.3d 1245, 1246-48 (10th Cir. 2001). But victims and the Government have only recently begun seeking restitution from the end-users or possessors of child pornography. Indeed, counsel for "Amy" represents that the first restitution order against a defendant convicted only of possession of child pornography was entered in June of this year. (Amy's Restitution Br. at 78.)

A review of the cases decided thus far shows that victims' success in obtaining restitution has varied significantly in district courts across the country.[7] At one extreme, courts have awarded the entire amount requested by the victims without any discussion as to proximate causation. See, e.g., United States v. Staples, No. 09-14017-CR, 2009 WL 2827204, at *4 (S.D. Fla. Sept. 2, 2009). At the other extreme, some courts have declined to order any restitution based on the lack of evidence showing a quantifiable loss

---

[7] As of the time of this writing, none of the circuits have addressed this issue.

proximately caused by the offense of conviction. See, e.g., United States v. Simon, 2009 WL 2424673, at *7 (N.D. Cal. Aug. 7, 2009). Some courts appear to have adopted a set amount for each defendant convicted of possession of child pornography. For example, the Central District of California seems to routinely order restitution of $5000 while the Eastern District of California routinely orders restitution of $3000. See United States v. Brown, No. 2:08-cr-1435-RGK-1 (C.D. Cal. filed Oct. 5, 2009) (awarding $5,000); United States v. Ferenci, No. 1:08-cr-0414 AWI, 2009 WL 2579102, at *6 (E.D. Cal. Aug. 19, 2009). Additionally, in some cases, the Government and the defendant have stipulated to a restitution amount. See United States v. Granato, No. 2:08-cr-198 (D. Nev. filed Aug. 28, 2009).

In the context of a restitution order, the First Circuit has explained that "[t]he watchword is reasonableness. A sentencing court should undertake an individualized inquiry; what constitutes sufficient causation can only be determined case by case, in a fact-specific probe." Vankin, 112 F.3d at 590 (interpreting the VWPA). Proximate cause is defined as "[t]hat which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces injury, and without which the result would not have happened." Black's Law Dictionary 1225 (6th ed. 1990). The First Circuit has held that "restitution should not be ordered if the loss would have occurred regardless of the defendant's misconduct underlying the offense of conviction." United States v. Cutter, 313 F.3d 1, 7 (1st Cir. 2002). "This means, in effect, that the government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal connection between the conduct and the loss is not too attenuated (either factually or temporally)." Vankin, 112 F.3d at 589-90.

A district court is not precluded from ordering restitution by the inability to calculate the amount owed to a victim with mathematical precision. <u>United States v. Savoie</u>, 985 F.2d 612, 617 (1st Cir. 1993). However, "a 'modicum of reliable evidence' is required to establish a restitution award; 'an award cannot be woven solely from the gossamer strands of speculation and surmise.'" <u>United States v. Mahone</u>, 453 F.3d 68, 74 (1st Cir. 2006) (quoting <u>Vankin</u>, 112 F.3d at 587).

In this case, the Court has reviewed all of the evidence submitted by the Victims.[8] While a significant portion of the harm that the Victims have suffered was solely caused by the original abuse, some of the Victims' harm clearly arises out of the widespread availability of their images and the possession of their images by individuals such as the Defendant. For example, the Victims experience distress when they think about someone viewing their images and possibly being motivated to abuse a child in the same manner that they were abused. The Victims are afraid that their images might be used by an abuser to "groom" an unwitting child. They experience anxiety when they are in public because they wonder whether people they encounter have seen their images. The Victims feel a lack of control because they know that there is nothing they can do to remove the images of their abuse from the public realm. All of these feelings contribute to their losses in that they need to continue attending counseling and taking medication. These

---

[8] To substantiate her claim for restitution, "Amy" has submitted: (1) a victim impact statement; (2) a psychological evaluation by Dr. Joyanna Silberg; and (3) an economic report by Stan Smith. Based on these reports, "Amy" requests $2,855,173 for lost wages and earning capacity, $512,618 for future treatment and counseling costs, $16,980 in expert fees, and an unknown amount for attorney's fees and other costs. Altogether, "Amy" asks the Court to order restitution of at least $3,367,854.00.
    In support of her claim for restitution, "Vicky" has submitted: (1) a forensic psychological evaluation completed by Dr. Randall Green; (2) her victim impact statements as well as her mother's and step-father's; and (3) a transcript of an internet chat that discusses "Vicky" and her images. On this evidence, "Vicky" requests $128,005 for future counseling expenses, (2) $19,497.91 for expenses; and (3) $3,500 in attorney's fees for a total of $151,002.91.

feelings also impact their ability to find meaningful employment, which results in lost earnings.

It is undisputed that everyone involved with child pornography—from the abusers and producers of the images to the end-user/possessors such as the Defendant in this case—contributes to the victims' ongoing harm. The difficulty lies in determining what portion of the Victims' loss, if any, was proximately caused by the specific acts of this particular Defendant.

Having reviewed all of the evidence, the Court finds that there is nothing in the record showing a specific loss that was proximately caused by this particular Defendant's possession of the victims' images. The losses described the by the Victims are generalized and caused by the idea of their images being publicly viewed rather than caused by this particular Defendant having viewed their images. In the documentation supporting the Victims' restitution requests, there is no mention of the impact that learning of Mr. Berk's offense had on either of the Victims. In fact, there is no mention of Mr. Berk at all.[9]

If, for example, an expert had originally opined that "Amy" or "Vicky" would need monthly counseling sessions and, upon learning of Mr. Berk's possession of her images, she would instead need weekly sessions, then the Court could order restitution for this additional loss. In fact, if there was evidence that the Victims had to attend even

---

[9] A comparison between the timing of the prosecution of this action and the dates on the materials submitted by the Victims, specifically their expert psychological evaluations, calls into question whether the Victims' expert reports are relevant here. "Amy" was evaluated by her psychological expert in June and November 2008 and the resulting report is dated November 21, 2008. "Vicky" was evaluated by her psychological expert on April 10, 2009 and the expert's report is dated May 22, 2009. Mr. Berk was indicted for this offense on September 5, 2008 but did not plead guilty until May 26, 2009. The Court is aware that the Government notified the Victims of Mr. Berk's offense, but the Court is unaware as to when this notification occurred. If the Victims were not notified of Mr. Berk's possession of their images until after his conviction, the Victims would not have had knowledge of his actions at the time they were evaluated and his actions could not have possibly caused the losses they allege.

one additional counseling session due to Mr. Berk's actions, then restitution may have been appropriate. If, after being notified of Mr. Berk's offense, one of the Victims had to miss a day of work, then restitution may have been appropriate. But there is no evidence in the record before the Court that, upon learning of this particular Defendant's conduct, the Victims suffered any additional loss above and beyond what they had already experienced.[10]

Ultimately, the fundamental goal of all restitution statutes is to "ensure that the wrongdoer is required to the degree possible to restore the victim to his or her prior state of well-being." S. Rep. 104-179, at 12-13. Before this Defendant viewed their images, the Victims had suffered all of the losses established by the evidence (with the exception of estimated future losses). Their "prior state of well-being" had already been inalterably damaged both by the initial abuse and by the idea that other individuals were viewing their images on a continuing basis.[11]

---

[10] The Victims contend that each time they are notified that another person has been found in possession of their images, they feel violated all over again. The Court does not question this statement. Were this a civil tort action, the Victims may have been able to recover for pain and suffering or some other measure of damages for the anguish they experience when they receive a new notification. But "[p]ain and suffering . . . and other unliquidated damages that are particularly susceptible to arbitrary determination are usually not included in a restitution order." Note, Victim Restitution in the Criminal Process: A Procedural Analysis, 97 Harv. L. Rev. 931, 937-38 (1984) (citing state law and examining the different goals of restitution and civil tort law); see also United States v. Barnette, 10 F.3d 1553, 1556 (11th Cir. 1994) ("An order of restitution is not a judicial determination of damages."). In enacting the federal restitution statutes—including § 2259—Congress chose to authorize restitution for a victim's "losses." By using this verbiage, "Congress decided that criminal restitution should be limited to the victim's readily identifiable expenses and should not be extended to include damages which are difficult to calculate, such as pain and suffering." Note, Restitution in the Criminal Process: Procedures for Fixing the Offender's Liability, 93 Yale L.J. 505, 509 n.16 (1984) (citing 128 Cong. Rec. H8207 (daily ed. Sept. 30, 1982) (statement of Rep. McCollum made in conjunction with adoption of the VWPA)).

[11] The Supreme Court has stated:
> Restitution is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the more direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine.

The Court is sympathetic to the difficulty of showing a loss proximately caused by the conduct of any particular defendant. But the Court's sympathy does not override the requirement that such a showing be made before the Court can order restitution. Having reviewed all of the evidence presented, the Court finds that the Government has not met its burden of establishing a specific loss proximately caused by this particular Defendant's possession of the Victims' images. Accordingly, restitution is not appropriate. See United States v. Cook, No. 4:08-cr-24 (D. Alaska issued on Sept. 9, 2009) (refusing to order restitution because "it would be highly speculative and impossible to assess a reasonable restitution amount as to Defendant for the images he observed and distributed."); United States v. Simon, No. CR-08-0907 DLJ, 2009 WL 2424673, at *7 (N.D. Cal. Aug. 7, 2009) (denying restitution to "Amy" in a similar possession case because there was no evidence identifying "a specific injury to the victim that was caused by the specific conduct of the defendant."); United States v. Raplinger, No. 05-cr-49-LRR, 2007 WL 3285802, at *5 (N.D. Iowa Oct. 9, 2007) (refusing to order restitution in favor of victim of sexual abuse because "the court simply has no way to gauge . . . whether expenses for [the victim's] treatment and counseling were the proximate result of Defendant's crimes.").

---

Kelly v. Robinson, 479 U.S. 36, 49 n.10 (1986). If courts allow the amount of restitution to move farther and farther away from the loss shown to have been caused by the particular defendant's actions, restitution has the potential to become indistinguishable from a fine—with the only difference being the payee.

**IV.     CONCLUSION**

Because the Government has failed to present sufficient evidence showing a particular loss proximately caused by the offense of conviction, the Court declines to enter a restitution order in this case.

SO ORDERED.

/s/ George Z. Singal<br>United States District Judge

Dated this 29th day of October, 2009.