## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | | |
|---|---|---|---|
| MICHAEL BERK, | ) | | |
| | ) | | |
| Movant, | ) | | |
| | ) | | |
| v. | ) | 2:08-cr-00212-GZS | |
| | ) | 2:13-cv-00061-GZS | |
| | ) | | |
| UNITED STATES, | ) | | |
| | ) | | |
| Respondent | ) | | |

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

Michael Berk has filed a timely motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. §2255, based on ineffective assistance of counsel.  (Motion, ECF No. 152.)[1] Berk enumerates twenty issues, which I have consolidated as follows.  Berk argues that counsel:  (1) failed to seek a plea agreement; (2) overcharged and retaliated against Berk after Berk's mother rejected counsel's inappropriate advances; (3) failed to move to suppress a custodial interrogation; (4) failed to investigate and call relevant witnesses at trial and failed to object to hearsay at sentencing; (5) failed to obtain a psychological evaluation of Berk and expert psychological testimony; (6) failed to properly prepare Berk to testify in his own defense; (7) failed to investigate and offer exculpatory evidence; (8) failed to obtain special findings in return for waiving his jury trial right and failed to ensure that Berk would appear in court in the formal suit that his mother had sent to the attorney's office; (9) failed to cross-examine adequately; (10) failed to sufficiently argue legal points or request a bill of particulars; (11) failed to make additional arguments at sentencing.  The government requests a summary dismissal.  I conclude

---

[1]  ECF No. 151 contains the motion but no attachments and no specific grounds.  ECF No. 152 contains both the motion and the attachments, including the grounds for the motion.  I refer to ECF No. 152 as the motion.

that no evidentiary hearing is warranted under Rule 8 of the Rules Governing Section 2255

Cases and I recommend that the Court deny Berk's motion for habeas relief under 28 U.S.C. §

2255.

### Factual and Procedural Background

The facts of the crimes involved in this case are set forth in the First Circuit opinion on

Berk's direct appeal.  United States v. Berk, 652 F.3d 132 (1st Cir. 2011).  Berk pleaded guilty to

one count of possession of child pornography, and following a bench trial he was convicted of

two counts of attempting to entice a minor to engage in sexual conduct.  Id. at 134.  He was

sentenced to 200 months in prison on the enticement conviction and 120 months on possession

of child pornography, to be served concurrently, followed by five years of supervised release on

all counts, to be served concurrently.  Id.  (Sentencing Tr. at 44, ECF No. 146.)

On appeal, Berk argued that the indictment was defective because it lacked an element of

the crime charged, and the evidence was insufficient to convict him given that his only contact

was with adults.  Id. at 134, 139-40.  The First Circuit affirmed.  Id.  The court also concluded

that it need not address a challenge to the sentence where the challenge was predicated on

invalidating Berk's conviction.  Id. at 141.   On February 27, 2012, the Supreme Court denied

Berk's petition for a writ of certiorari.  Berk v. United States, 132 S. Ct. 1650 (2012).   Berk's

section 2255 motion is postmarked February 26, 2013, and was filed on February 28, 2013.

Berk's ineffective assistance claims focus on the three attorneys who variously

represented him during the pre-trial proceedings, at the trial, which was held over three days in

May 2009, and at sentencing.  The first attorney was court-appointed and represented Berk from

his initial appearance in October 2008 to January 2009 when that attorney was permitted to

withdraw.  The second and third were retained as pro hac vice and local counsel upon

2

withdrawal of the first attorney.  Counsel who served pro hac vice was permitted to withdraw in March 2009, and local retained counsel became court-appointed counsel for trial and through sentencing.  Appellate counsel is not at issue.

### Standard of Review

Pursuant to section 2255, a person may move to vacate his sentence on the basis that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a); see also Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994) (quoting section 2255).  Although the fourth category is "rather general," it is only implicated "if the claimed error is 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'"  Knight, 37 F.3d at 772 (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).  The burden is on the section 2255 movant to make out a case for section 2255 relief.  David v. United States, 134 F.3d 470, 474 (1st Cir. 1998).

A habeas petition is not a substitute for an appeal.  Berthoff v. United States, 308 F.3d 124, 127 (1st Cir. 2002).  "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence."  Id. at 127-28.  An allegation of ineffective assistance of counsel can excuse a procedural default, but only if the movant shows that counsel's representation fell below an objective standard of reasonableness and prejudiced the movant's defense.  Owens v. United States, 483 F.3d 48, 63-64 (1st Cir. 2007).  Nevertheless, "[a] nonconstitutional claim that could have been, but was not,

3

raised on appeal, may not be asserted by collateral attack under § 2255 absent exceptional circumstances." Knight, 37 F.3d at 772.

The First Circuit has stated that when a "petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). In issuing the following recommended decision I cannot take such liberty but I can approach the record in a fashion that takes into account this court's ability to do so on review of this recommendation.

## Discussion

To succeed on his ineffective assistance of counsel claim, Berk "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Turner v. United States, 699 F.3d 578, 584 (1st Cir. 2012). The two prongs of the ineffective assistance test are commonly referred to as the "cause" and "actual prejudice" tests. See Bucci v. United States, 662 F.3d 18, 29 (1st Cir. 2011). A district court reviewing such claims need not address both prongs of the test because a failure to meet either prong will undermine the claim. Strickland v. Washington, 466 U.S. 668, 697 (1984).

As for the "cause" test, the court must be "'fairly tolerant'" of counsel's performance because the Constitution does not guarantee a "'perfect defense.'" Moreno-Espada v. United States, 666 F.3d 60, 65 (1st Cir. 2012) (quoting Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994)). The issue is whether counsel's performance was "'within the wide range of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional norms.'" Bucci, 662 F.3d at 30 (quoting Strickland, 466 U.S. at 688-

4

89). "Judicial scrutiny of the defense counsel's performance is 'highly deferential,' and the defendant must overcome a 'strong presumption . . . that, under the circumstances, the challenged action might be considered sound trial strategy.'" Id. (quoting Strickland, 446 U.S. at 689).

The "actual prejudice" test requires a showing "sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The court must consider "the totality of the evidence before the judge or jury" when measuring the prejudicial effect. Turner, 699 F.3d at 584 (quoting Dugas v. Coplan, 506 F.3d 1, 9 (1st Cir. 2007) (quotation marks omitted)). Factors that are commonly considered include the strength of the prosecution's case, the effectiveness of the defense presented at trial, and the potential for new evidence and new avenues for cross-examination to undermine the credibility of government witnesses. Id.

1. **Failure to Seek a Plea Agreement (Ground One)**

Berk alleges that counsel failed to seek a plea agreement, despite his request. The government filed as part of its extended record a letter dated February 4, 2009, in which the prosecutor stated, "[a]s discussed and promised, I am forwarding for you and your client's consideration a plea agreement and prosecution version of events." (ECF No. 161-4.) [2] Berk's counsel's affidavit (ECF No. 161-2) references his handwritten notes, which he states he took in the course of his representation of Berk. The notes are dated February 6, 2009, at the top of the page, but they appear to indicate that counsel had conversations on two days. One was a seven-minute conversation on a Tuesday which resulted in the note "just plead guilty," and the other was a three-minute conversation on a Thursday which resulted in the note "no plea, would like to

---

[2]    Although the government's letters were addressed to one of Berk's attorneys, another of his attorneys addressed the matter with Berk. The latter attorney's handwritten notes indicate that the plea offer was communicated to Berk.

discuss defenses." (ECF No. 161-5.)   Berk counters that these are "not evidence of the communication, much less negotiation, of a plea agreement . . . ." (Reply at 3, ECF No. 166.)

Berk argues essentially that because counsel's affidavit does not directly state that the handwritten notes concern a proposed plea agreement, the government overstates what the handwritten notes can fairly be read to state.  I conclude that although counsel's affidavit could have been more explicit in stating that the handwritten notes reflect his conversations with Berk about a plea offer and Berk's rejection of the offer, the handwritten notes themselves are quite clear, especially given that they were dated just a couple of days after the government's letter and plea offer.  Berk does not deny that the government made an offer, nor does he deny that he had a conversation with counsel about the plea offer.  Rather, his argument is that the affidavits and handwritten notes provide insufficient evidence of the conversation.  Berk, not the government, has the burden to demonstrate that he is entitled to an evidentiary hearing on his ineffective assistance claims.  See David, 134 F.3d  at 474.  Because he has not presented evidence to the contrary, I conclude that counsel did inform him of the plea offer and he rejected it.

Berk also argues that counsel was ineffective for failing to negotiate a more favorable offer after he rejected the government's initial offer.  (Reply at 4.)  This is not a cognizable claim.  There is no issue of fact or law in this case concerning whether counsel actually had a duty to initiate plea negotiations, in addition to a separate duty to communicate any formal plea offers to Berk, because here counsel did both.  See Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012); United States v. Pender, 514 F. App'x 359, 361 (4th Cir. 2013).  That Berk did not receive the terms he alleges he wanted is not grounds for a claim of ineffective assistance of counsel.

2. **Fee Dispute and Inappropriate Behavior (Ground Two)**

Berk asserts that his mother had a fee dispute with both pro hac vice and trial counsel, and that counsel who served pro hac vice retaliated against Berk after his mother rejected that attorney's inappropriate advances.  (Motion at 7.)  Berk provides no details about the inappropriate advances, other than alleging generally that there were "abusive emails," adding that the attorney called him "'disgusting,'" and the attorney said he thought Berk would "'never see the light of day.'"  Berk's evidence concerning both the fee dispute and inappropriate advances consists of the letter the attorney sent to Berk's mother.  (ECF No. 161-9.)  In that letter, counsel addressed only the fee dispute—nothing was said about any allegation of inappropriate advances.  The letter states:

> [I]t was obvious that [Berk] was guilty of one of the more egregious offenses against children, attempting to exploit a person's financial situation and buy their child to rape, that anyone could imagine.  The pornographic images contained on his computer were the most vile, disgusting collection I have [ever] seen in all my years as a prosecutor or defense attorney and there is no question he will be convicted of possession of child pornography.  There is little doubt he will be convicted of the other charges as well, considering he is on tape at his designated meeting place on video discussing buying a 12 year old girl, and he will receive life in prison.  Despite that I arranged a very favorable plea disposition for [Berk], his rejection of that plea, strenuously recommended not only by myself but by [local counsel], is an indication of his complete inability to accept responsibility for his horrific conduct.

A fee dispute could in theory give rise to an actual conflict of interest that in turn could adversely affect the attorney's performance.  See Daniels v. United States, 54 F.3d 290, 294-95 (7th Cir. 1995).  However, in this case, the extended record includes a letter dated August 3, 2009, from the New Jersey Supreme Court District Ethics Committee to Berk's mother, stating that the chairperson of the Committee determined that there was "no evidence of unethical conduct that would warrant filing a complaint" against the attorney who served pro hac vice. (ECF No. 161-22.)  There is no evidence of any ethical breach concerning inappropriate

7

advances towards Berk's mother, let alone anything that might have given rise to a conflict of interest between the attorney and Berk. As to the fee dispute, an arbitration determination indicates that of the $10,504 charged by pro hac vice counsel, $10,000 was a reasonable charge and $504 was to be refunded. (ECF No. 161-23.) That there was a relatively small refund ordered does not constitute evidence of an actual conflict of interest affecting the performance of pro hac vice counsel.

As to local counsel, Berk argues that the failure to return $2,500 after local counsel went from retained to court-appointed status indicates a conflict of interest. (Motion at 7.) In his reply, he argues that because local counsel received funds from his association with pro hac vice counsel, local counsel was tainted by the relationship with pro hac vice counsel. I conclude that Berk has not generated a factual issue requiring an evidentiary hearing as to any alleged conflict of interest of local counsel.

Furthermore, as the government points out, Berk has made no showing that either of the attorneys "'could have pursued a plausible alternative defense strategy and . . . the alternative trial tactic was inherently in conflict with or not pursued due to the attorney's other loyalties or interests.'" Reyes-Vejerano v. United States, 276 F.3d 94, 97 (1st Cir. 2002) (quoting Familia-Consoro v. United States, 160 F.3d 761, 764 (1st Cir. 1998)).

3. **Failure to Move to Suppress Evidence (Ground Three)**

Berk argues that counsel was ineffective for failing to move to suppress statements he made during a custodial interrogation. (Motion at 7.) The First Circuit opinion in this case states that after Berk was taken into custody, he "was taken to a local police station where he waived his Miranda rights before agreeing to a videotaped interview." Berk, 652 F.3d at 136.

> Asked what he thought was the reason for his arrest, Berk responded that it was related to his two "interests": paying for sex and girls under the age of 18. He

> also said that in his communication with [the father of one of the girls] he "saw
> somebody who needed some money—I said, hey, do you have any females . . . as
> a matter of fact he had a certain female I might be interested in—so I said alright,
> well, maybe we should talk about it . . . he said she was twelve."

Berk, 652 F.3d at 136.

In an opinion on direct appeal in another case, the First Circuit held that "a defendant

challenging admission of statements made subsequent to the [Miranda] warnings must point to

evidence tending to show that his statements nonetheless were 'coerced, compelled or

involuntary.'"  United States v. Duarte, 160 F.3d 80, 81 (1st Cir. 1998) (quoting United States v.

Lawrence, 889 F.2d 1187, 1189 (1st Cir. 1989)).  Berk asserts that his arrest was "inherently

coercive" because he was "placed in [handcuffs] and forced to the station . . . ."  This, he argues,

"gave the impression of arrest and subjugation despite later admission by officers that such

tactics were deliberately misleading for psychological effect."  (Motion at 7.)   The First Circuit

has noted that "where Miranda warnings [are] given, handcuffs and ten hours of detention,

including five hours of intensive questioning, does not demonstrate that [a] confession was

coerced."  United States v. Navedo-Colón, 996 F.2d 1337, 1338 (1st Cir. 1993) (citing Shriner v.

Wainwright, 715 F.2d 1452, 1455-56 (11th Cir. 1983), cert. denied, 465 U.S. 1051 (1984)).

Berk alleges no facts indicating that this was anything other than an arrest in which the police

gave him the Miranda warnings, handcuffed him, and took him to the police station.  That the

arrest may have had the psychological effect on him that he says they told him they sought does

not make it coercive.  Berk has not presented any issue of fact concerning either ineffective

assistance of counsel or prejudice from counsel's failure to file a motion to suppress.

4. **Failure to Investigate and Call Witnesses and Failure to Object to Hearsay (Grounds Four, Eleven, Sixteen, and Eighteen)**

Berk argues that counsel was ineffective for failing to investigate, subpoena materials, and call certain witnesses at both the trial and sentencing.  (Motion at 7, 10-13.)

One of the witnesses Berk argues would have provided favorable testimony was a woman who Berk said had engaged in "identical uncharged conduct" and who "would have corroborated [Berk's] testimony and expanded the Court's understanding of the 'scene.'"  (Motion at 7.)  The special agent testified at trial that this woman was a mother looking for housing for herself and her child, and Berk communicated with her on-line.  (Trial Tr. II at 59-60, ECF No. 143.)  In Berk's reply brief, he argues that if she had testified about their consensual, legal, adult activity, this would have cast doubt on the government's theory that Berk was truly interested in minors. (Reply at 7.)   Another person who Berk asserts counsel should have investigated for possible testimony was a woman who said she had an intimate relationship with Berk in 2007-08 involving unconventional but legal sexual activity.  (Reply attachment, ECF No. 166-9.)  She said she "would have provided favorable defense testimony" but was never contacted by Berk's counsel.  In addition, Berk argues that counsel failed to investigate the "fantasy nature" of Berk's communications with the two prosecution witnesses.  (Motion at 8.)  Finally, Berk argues that his former employer should have been called as a trial witness.  (Motion at 7.)

Regarding sentencing, Berk argued that counsel should have urged the probation office to contact his former intimate partner, his former employer, and family members including Berk's mother, who is a grant coordinator at a substance abuse non-profit organization, and Berk's aunt, who is a licensed clinical social worker.  Berk's mother and aunt said in letters attached to Berk's motion and his reply that they would have spoken in Berk's behalf, but they were not asked. (Motion at 16-17.)

"Under the first prong of <u>Strickland</u>, there is a 'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance,' and courts should avoid second-guessing counsel's performance with the use of hindsight.'"  <u>Knight v. Spencer</u>, 447 F.3d 6, 15 (1st Cir. 2006) (quoting <u>Strickland</u>, 466 U.S. at 689).  Berk has presented no evidence to overcome the presumption that counsel acted reasonably in not pursuing a strategy that would have put more testimony about Berk's sex life in evidence, even if the testimony concerned legal activity.  Testimony about Berk's legal sexual activity was not exculpatory, nor would it have been helpful to Berk at sentencing.  Regarding the statements of the former employer and Berk's mother and aunt about their willingness to speak at sentencing, Berk's counsel represented to the court that he had submitted letters from Berk's former employer, his friends, and his family.  (Sentencing Tr. at 36-37.)  Berk has not offered any evidence to support his assertion that the court lacked important sentencing information from these sources.  (Motion at 12-13.)

Berk has not presented any issue of fact concerning either ineffective assistance of counsel or prejudice from counsel's failure to investigate or offer the testimony of particular witnesses at either the trial or at sentencing.

Although Berk argues that counsel was ineffective at sentencing for failing to object to hearsay evidence, the court may consider hearsay evidence at sentencing as long as it is "'reliable,'" and therefore that evidence is hearsay would not in itself be grounds for an objection.  <u>See</u> <u>United States v. Rodriguez</u>, 162 F.3d 135, 150 (1st Cir. 1998) (quoting <u>United States v. Montoya</u>, 967 F.2d 1, 3 (1st Cir. 1992)).  Berk makes no argument that the hearsay evidence is not reliable.

5. **Failure to Obtain a Psychological Evaluation and Expert Testimony (Grounds Five, Seventeen, and Twenty)**

Berk argues that a psychological evaluation and expert testimony based on that evaluation would have bolstered his defense that he lacked the requisite state of mind at the time of the crimes because he was merely engaging in role play and banter.  (Motion at 8.)  In his reply, he argues that support from a credible expert witness would have enhanced his defense.  (Reply at 10.)  A psychological evaluation, he argues, would also have revealed that at the time of the criminal prosecution, Berk was confused and did not understand the court process.  (Motion at 14.)  He also argues that counsel should have obtained a psychological evaluation for sentencing.  (Motion at 13.)

As to Berk's assertion that he did not understand the court process, the court made findings to the contrary.  In the hearing in which Berk waived his right to a jury trial, the court found on May 1, 2009, that Berk entered a knowing and voluntary waiver.   (Jury Waiver Tr. at 8, ECF No. 141.)  In Berk's plea hearing on the child pornography count, held on May 26, 2009, the court found that he was competent to enter a plea.  (Rule 11 and Trial Tr. I at 5, 17, ECF No. 142.)  At the sentencing hearing on October 26, 2009, the court found Berk to be competent.  (Sentencing Tr. at 2-3.)  Berk's assertions are conclusory, unsupported, and contravene the specific findings of the court.

Berk testified at trial, denying that he had ever attempted to have sex with a minor and stating that he never had any intention of either meeting the minors involved in this case or soliciting them to have sex with him.   (Trial Tr. Excerpt at 42, 141, ECF No. 105.)  Trial counsel argued in closing that Berk intended only to engage in sexual fantasy with adults.  (Trial Tr. III at 7, ECF No. 144.)  Counsel's failure to introduce expert testimony on Berk's state of mind "did not create a substantial likelihood of a miscarriage of justice . . . ."  See Mello v. DiPaulo, 295

F.3d 137, 145-47 (1st Cir. 2002); Knight, 37 F.3d at 772.   Berk has alleged no facts that would support a finding that the testimony of an expert would have led to a reasonable probability of a different result.  See Turner, 699 F.3d at 584.

In Berk's reply, he cites to Turner v. Duncan, 158 F.3d 449, 456-57 (9th Cir. 1998), which held that counsel was ineffective for failing to investigate and prepare a defense that the murder victim had physically and sexually abused the defendant, and that counsel was ineffective for failing to offer a favorable psychiatric report that had been completed and was in the file.  The court stated that counsel's "failure to investigate and obtain psychiatric corroboration of Turner's defense is especially egregious in this case, given that the entire defense strategy rested on contesting the intent element of the crime, a defense which could have benefited enormously from readily available psychiatric evidence."  Id.  Berk's case is not at all similar to Turner, however.  Berk cannot reasonably argue that his defense of lack of intent was undeveloped at trial.  Furthermore, unlike the defense in Turner, which involved admitting the murder but explaining the defendant's extreme psychological circumstances, Berk's is simply that he was engaging in social play notwithstanding that his words and actions might indicate otherwise.  I cannot foreclose the possibility that expert testimony explaining social context might have supported Berk's testimony, but that is not the standard by which a claim for ineffective assistance is assessed.   The standard is whether counsel's strategy was reasonable, and there is a strong presumption that it was.  Knight, 447 F.3d at 15.  Berk has not made a showing sufficient to overcome the presumption that it was reasonable for counsel not to pursue a psychological evaluation, nor has Berk met his burden with respect to prejudice.

Berk's argument that a psychological evaluation would have made a difference at sentencing is equally unavailing.  He incorrectly asserts that obtaining such an evaluation is

"standard procedure." (Motion at 13.) It is not; rather, the decision whether or not to obtain a psychological evaluation for use at sentencing is a multi-faceted strategic decision that involves in part an assessment of any downside risk. See Stone v. United States, Nos. 1:08-cr-00006-JAW, 1:11-cv-00007-JAW, 2013 WL 183708, at *15-16, 27, 2013 U.S. Dist. Lexis 6988, at *44-46, 79. "Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." Wiggins v. Smith, 539 U.S. 510, 533 (2003). The First Circuit has recognized "that reasonably diligent counsel are not always required to consult an expert." Dugas v. Coplan, 428 F.3d 317, 328-29 (1st Cir. 2005) (holding that counsel's failure to conduct pretrial investigation was constitutionally deficient). The standard is whether "'reasonable professional judgments support the limitations on investigation.'" Id. (quoting Strickland, 466 U.S. at 690). Berk alleges no facts in support of his argument that counsel was ineffective for failing to obtain a psychological evaluation for sentencing purposes or explaining how he was prejudiced by the lack of such an evaluation at sentencing.

### 6. Failure to Confer and Properly Prepare Berk to Testify (Ground Six)

Berk asserts a number of allegations concerning trial counsel's failure to prepare for trial, including counsel's failure to prepare Berk to testify, counsel's advice that Berk would not be able to collect witnesses for trial, and counsel's statement to Berk that counsel could not speak confidentially with him on the day Berk testified, which led to Berk's damaging testimony. (Motion at 8; Affidavit of Michael Berk, ECF No. 166-1.) The only example Berk gives is that he was not permitted to testify about legal sexual activities in which he engaged with a woman, and his counsel failed to object. (Motion at 8.)

Regarding the allegation that counsel told Berk he could not speak with him confidentially during times when he would be expected to at trial, Berk asserts no facts that would support a finding of prejudice, and therefore I do not reach the issue whether he has alleged facts that would support a finding that counsel's performance on this point was subpar. Berk does not allege what he would have said differently on the stand and therefore I cannot conclude that he suffered prejudice even if I were to assume for the sake of argument that he had alleged ineffective assistance. The same holds for Berk's allegation that counsel told him he could not find and present his own witnesses. Berk does not name the additional witnesses he would have called. This allegation lacks substance because Berk does not provide any specifics about these alleged witnesses, and therefore he has not sustained his burden to show prejudice. See David, 134 F.3d at 478; United States v. Hart, 933 F.2d 80, 83 (1st Cir. 1991).

7. **Failure to Investigate and Offer Exculpatory Evidence
   (Grounds Seven, Nine, Ten, and Eleven)**

Berk argues that counsel failed to investigate potentially exculpatory evidence, including electronic communications that might have been obtained from service providers. (Motion at 9, 10.) The example he gives, however, concerns evidence that he asserts was introduced. Some of the evidence was found by Berk's family. (Motion at 10.) He argues that he was prejudiced because this evidence was introduced late, its authenticity was questioned, there was insufficient time to prepare, and counsel failed to move for a continuance. (Motion at 9, 10.) He also argues that the government failed to provide him with evidence, but he does not specify what it was that the government failed to provide or explain how that evidence was exculpatory. (Motion at 10.)

Berk may be referring to evidence of communications concerning alleged legal conduct in which he engaged. If so, that argument fails because the evidence is not exculpatory or otherwise favorable to him. Berk's decision to engage in conduct that may have been legal does

15

not exculpate him from other activity that is illegal.  For that reason, the government cannot be found to have suppressed evidence favorable to Berk, and there is no <u>Brady</u> violation.  See <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).  To the extent Berk may be referring to something else, his allegations are too vague to discern.

I have previously discussed why counsel's decision not to pursue evidence of Berk's legal conduct does not constitute ineffective assistance.  Berk also vaguely refers to other evidence that the attorney did not obtain, but he does not explain what that evidence is.  (Motion at 9.)  Berk has not sustained his burden to show either ineffective assistance or prejudice concerning this evidence.  See <u>David</u>, 134 F.3d at 478; <u>Hart</u>, 933 F.2d at 83.

8. **Waiver of Jury Trial, Failure to Obtain Special Findings, and Failure to Provide Proper Attire (Grounds Eight and Fourteen)**

Berk argues that his decision to waive his right to a jury trial was not knowing, intelligent, and voluntary because counsel failed to advise him adequately at the time of the waiver about his right to special findings.  This argument fails because counsel did as Berk asked, which was to retain his right to request special findings.  (Transcript of Waiver of Jury Trial at 7-8.)  To the extent Berk argues that counsel failed to follow this up with a request for special findings at the end of the trial, he fails to allege any facts that could support a finding of prejudice.

In addition, Berk alleges that someone who remains unidentified led him to believe that he would be permitted to wear a suit in court, but instead he was made to wear his jail uniform, and he was shackled.  (Motion at 9.)  The First Circuit has held that "[a] due process violation occurs not from an accused's appearance in prison clothes but from the compulsion that he so appear."  <u>United States v. Rodríguez-Durán</u>, 507 F.3d 749, 777 (1st Cir. 2007) (emphasis omitted) (citing <u>Estelle v. Williams</u>, 425 U.S. 501, 512 (1976)).  The concern is about "the

deleterious effect badges of confinement could have on the presumption of innocence and the jury's assessment of the defendant's guilt." Moore v. Ponte, 186 F.3d 26, 36 (1st Cir. 1999). Prejudicial effect on a jury is not a concern in this case because Berk's trial was before a judge, not a jury.

9. **Failure to Cross-Examine Adequately (Grounds Twelve and Thirteen)**

Berk argues that counsel failed to cross-examine adequately the father of the minor who Berk was convicted of attempting to entice. (Motion at 11.) The minor was age eight, but the father told Berk she was twelve. Berk argues that counsel failed to expose the father's predilection for fantasy, failed to attack his credibility, and failed to ask that the father be subject to recall for further questioning. Berk also alleges inadequate cross-examination of a mother of another minor, arguing that counsel failed to bring out that he told the mother not to convey the conversation or ideas to any minor. (Motion at 11.)

Counsel did ask that the father be subject to recall when the father was excused at the end of questioning, and the court so ordered. (Trial Tr. I at 53.) As to the issue of credibility, the government had already elicited on direct examination that the father had been convicted of unsworn falsification. (Trial Tr. I at 27.) Berk's counsel asked on cross-examination and the father admitted he lied about his daughter's age. Counsel did not ask why the father lied, as Berk argues he should have. (Trial Tr. I at 47-48.) Counsel also asked about emails from the father's address that he denied having typed. (Trial Tr. I at 49-52.) Counsel asked the father: "And you basically indicated that somehow forces outside of your home took control of your computer and was actually typing on your screen," to which the father answered, "Yes." Counsel then asked, "Did you witness that yourself," to which the father answered, "Yes." (Trial Tr. I at 49.) The father testified that this happened twice, through his router. (Trial Tr. I at 50.) A review of the

transcript shows that counsel's cross-examination did attack the father's credibility.  Berk does

not explain how further cross-examination might have altered the outcome of the trial.  Inquiry

into the father's motivation to lie about his daughter's age would not have been relevant to or

cast doubt upon the government's case against Berk.  Berk has therefore failed to assert facts that

would support a finding of either ineffective assistance or prejudice as to counsel's cross-

examination of the father.

 Nor do I conclude that Berk's allegations of ineffective assistance or prejudice stand up

as to counsel's cross-examination of the mother of another minor who Berk was convicted of

attempting to entice.  Berk does not cite, in either his motion or his reply, to any portion of the

record that supports his allegation that he told the mother not to communicate their conversation

or his ideas to any minor.  He has the burden to make out a case for section 2255 relief.  <u>See</u>

<u>David</u>, 134 F.3d at 474.  He has not done so as to this allegation.  Furthermore, counsel was not

ineffective for failing to focus on Berk's allegation that the mother was interested in engaging in

legal activity with Berk, as that evidence would not weaken the government's case against Berk

concerning the woman's minor daughter.

10. **Failure to Sufficiently Argue Legal Points or Request a Bill of Particulars (Ground Fifteen)**

 Berk argues that counsel waived the issues of whether the minors actually existed and

"the nexus of any underlying charge," and counsel failed to request a bill of particulars.  (Motion

at 12.)  In addition, he argues that counsel failed to argue that the statute was unconstitutional as

applied and failed to argue that the government did not prove that he took a substantial step with

respect to the minor's mother.

 Counsel's performance was not deficient for not having challenged the existence of real

children in this case; both the father of one intended minor victim and mother of the other

intended minor victim testified to the existence of their children.  (Trial Tr. I at 27, 111.)   Berk

alleges no facts that suggest any reasonable basis upon which counsel could have challenged the

evidence as to the existence of these children.

Berk's argument about the lack of a nexus to an underlying charge is undeveloped and

incomprehensible.  In Berk's direct appeal, he challenged a reference in the indictment to

unspecified underlying criminal conduct, and the First Circuit held that regardless of whether the

indictment was defective, Berk was not prejudiced.  Berk, 652 F.3d at 137-39.

Berk does not assert any issue of actual surprise or prejudice resulting from the lack of a

bill of particulars.  "A bill of particulars serves three purposes: to give the accused details

concerning the charges against him, enabling him to prepare a defense; to prevent double

jeopardy; and to avoid surprise at trial."  United States v. Hallock, 941 F.2d 36, 40 (1st Cir.

1991).  I conclude that he has failed to demonstrate either deficient performance or prejudice.

## 11.  **Additional Failures in Sentencing (Ground Nineteen)**

To the extent Berk's arguments relate to both the trial and sentencing, I have addressed

them together above.  Berk also makes several additional ineffective-assistance arguments

focused on his sentence.  (Motion at 13.)  First, he argues that counsel made no comparison

between Berk's actions and those of other similarly situated defendants.  Counsel is not required

to follow "every conceivable line of mitigating evidence" at sentencing.  Wiggins, 539 U.S. at

533.  One of the statutory sentencing factors the court must consider is "the need to avoid

unwarranted sentence disparities among defendants with similar records who have been found

guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  "[T]he court should articulate in open court

how consideration of these factors led it to select a particular sentence."  See United States v.

Rodríguez, No. 12-1476, --- F.3d ---, ---, 2013 WL 5345366, at *4, 2013 U.S. App. Lexis 19620,

at 10 (1st Cir. 2013) (citing 18 U.S.C. § 3553(c)).  However, "the fact that the sentencing court did not address the section 3553(a) factors one by one in explicating its sentencing decision in no way undermines the reasonableness of the sentence imposed."  United States v. Chapman, 209 F. App'x 3, 5 (1st Cir. 2006).  The court is not required to address each issue formulaically, and consequently it is reasonable for counsel to focus on the factors that the court is likely to find most important.  Berk makes no argument as to why a comparison with other cases would be particularly important under the sentencing facts here, nor can I discern any.  The sentence was at the low middle of the guideline range notwithstanding that the court found that Berk's conduct was horrendous, he was a predator, and his child pornography collection was among the largest the court had seen.  Consequently, it is possible that close comparisons with other cases might actually have worked against him.

Second, Berk argues that counsel failed to preserve his right to argue that the sentence was unreasonable and that the guideline calculation of a five-level enhancement for a pattern of activity involving the enticement of a minor did not apply.   Berk is incorrect; counsel did argue in both the sentencing memorandum and at the sentencing hearing that the guideline five-level enhancement for a pattern of enticement did not apply on the basis that Berk did not engage in physical sexual abuse of either of the minors involved.  (Sentencing Mem. at 1, ECF No. 127; Sentencing Tr. at 6.)

Third, Berk objects to the government's characterization that he has "an abiding and disturbing interest in having sex with little children," (Sentencing Tr. at 7) and he asserts that there was no evidence that he produced child pornography.  The government's characterization related to the enticement convictions, not the pornography conviction.  Arguing against the government's characterization of an "abiding" interest, on the basis that the pattern had been

established by only two crimes that were fairly close in time, would not be effective.  As to the child pornography charge, Berk was convicted of possession, not production, pursuant to 18 U.S.C. 2252A(a)(5)(B), so the fact that he was not producing child pornography would have no bearing on his sentencing for the conviction of possession.

### Conclusion

For the reasons stated above, no evidentiary hearing is warranted under Rule 8 of the Rules Governing Section 2255 Cases and I recommend that the Court deny Berk's motion for habeas relief under 28 U.S.C. § 2255.  I further recommend that the Court deny a certificate of appealability, pursuant to Rule 11 of the Rules Governing Section 2255 Cases, because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 17, 2013